# MIDDLESEX COUNTY.

## LOWELL FIVE CENTS SAVINGS BANK *vs.* INHABITANTS OF WINCHESTER.

If the inhabitants of a town have authorized their treasurer to borrow a certain sum of money for a specific purpose, and to give his note as treasurer therefor, and he has exercised this authority, they are not liable upon a note given by him in their name for money subsequently borrowed by him and converted to his own use, although he assumed to be acting under the authority conferred upon him, and the lender supposed that he was doing so.

CONTRACT upon two notes of $2000 each. The first note was as follows: " $2000. Lowell, January 22, 1858. For value received, the inhabitants of the town of Winchester promise the Lowell Five Cents Savings Bank to pay them or their order two thousand dollars on demand with interest semi-annually. Treasurer of said town, duly authorized by a vote of the town, N. A. Richardson." The second note was in the same form, and dated May 26, 1858. Upon each there were various indorsements of interest paid.

The following facts were agreed in this court, and found by *Hoar*, J. :

At a town meeting of the inhabitants of the town of Winchester, duly held March 23d 1857, N. A. Richardson was elected treasurer and collector, and was duly qualified and gave bond as required by law. At a meeting of said inhabitants duly held on the 1st of May 1857, the following vote was passed : " Voted, that the treasurer be authorized to borrow a sum of money, not exceeding two thousand dollars, to meet the demands upon the treasury in anticipation of the taxes, and give his note as treasurer therefor." Claiming to act by authority of the above vote, on the 13th day of May 1857 said Richardson borrowed one thousand dollars of Stephen Cutter, of Winchester, and on the 20th of June 1857 another thousand dollars of the same person, and gave his notes as treasurer therefor. These loans were negotiated and notes given with the knowledge of the defendants;

they were paid at maturity, and were brought into Richardson's annual account with the town, and were applied to the use of the town; but these facts were unknown to the plaintiffs, and no steps were taken to learn the same.

On the 22d day of January 1858, without the knowledge of the defendants or any other officer of the town, Richardson, claiming to act under the aforesaid vote, made application to the plaintiffs at their banking house in Lowell to borrow for the use of the town of Winchester two thousand dollars, and did then borrow and receive of them two thousand dollars, and gave them the note declared on in the first count of the declaration, at the same time leaving with them a copy of the vote of the town, certified by the town clerk of Winchester, as follows : [after copying the above vote,] " I hereby certify that the above is a copy of a vote passed by the town at the town meeting held on the first day of May 1857.   Josiah Hovey, Town Clerk."   Upon this note interest was paid regularly by Richardson, but neither the note, the money borrowed thereon, nor the interest paid was brought into any of his accounts with the town, and the defendants had no knowledge thereof until March 1861, when, Richardson having become insolvent, payment was demanded by the plaintiffs of the defendants ; but none of these facts, except payment of interest, were known to the plaintiffs, and no steps were taken to learn the same.

On the 22d day of March 1858, at a town meeting of the inhabitants of said Winchester duly held, the following vote was passed : " Voted, that the treasurer be authorized to borrow, under the direction of the selectmen, a sum of money, not exceeding two thousand dollars, ($2000,) to meet the demands on the treasury in anticipation of the taxes, and that he give his note as treasurer therefor."   By authority of the above vote, on the 29th day of March 1858, Richardson, having been at the said March meeting again duly elected treasurer and collector, and having been duly qualified and given bond as required by law, borrowed from the Woburn Bank two thousand dollars, and gave a note as treasurer of said town therefor, payable in six months, at the same time leaving with said bank the following

certificate, signed by the town clerk and the selectmen of Winchester respectively : [after copying the vote,] " Winchester, March 29th 1858. I hereby certify that N. A. Richardson was chosen treasurer and collector of this town at the annual meeting March 22d inst., and that the above vote was passed by the town at said meeting. Josiah Hovey, Town Clerk." " In accordance with the above vote, we, the selectmen of Winchester, authorize the treasurer to negotiate the above loan. Luther R. Symmes, Cephas Church, Sam'l M. Rice, Selectmen of Winchester." This note was paid at maturity, and was brought into the treasurer's annual account in March 1859, and the money so borrowed was applied to the use of the town ; but none of the facts relating to this loan were known to the plaintiffs, and they took no steps to learn the same.

On the 26th day of May 1858, Richardson, claiming to act under said last mentioned vote, made application to the plaintiffs at their banking house in Lowell to borrow for the use of the town two thousand dollars, and did borrow and receive of them two thousand dollars, and gave the note declared on in the second count of the declaration, at the same time leaving with them the following certificate, signed by the town clerk : [after copying the vote,] "A true copy of the vote passed at the annual meeting of the town, March 22, last past. Winchester, May 19, 1858. Attest, Josiah Hovey, Town Clerk." On the back of this certificate there was the following indorsement : "Approved, L. R. Symmes, Cephas Church, Sam'l M. Rice, Selectmen of Winchester." The interest on this note was paid semi-annually by Richardson, but neither the note, the money borrowed, nor the interest paid was brought into any of his accounts with the town, and the defendants had no knowledge thereof until March 1861, when, Richardson having become insolvent, payment was demanded by the plaintiffs of the defendants ; but none of these facts, except payment of interest, were known to the plaintiffs, and no steps were taken to learn the same.

At neither of the times when the notes declared on were given did the town need the money borrowed, nor was the same

applied to their use, but these facts were not known to the plaintiffs, and at both times Richardson claimed to borrow the money for the use of the town, under the authority of and for the purposes set out in said votes, and at both times there were taxes due and unpaid to the town, but the amount thereof due on the 22d of January 1858 was very small. The plaintiffs did not know at the time when either of said loans were made, and the notes therefor were given to them, that Richardson had borrowed any sum under either of said votes, and they took no steps to ascertain the same.

On the 17th of April 1857, under a vote of the town passed March 23d 1857, authorizing the borrowing of $2000, Richardson, on behalf of the town, borrowed of the plaintiffs $2000, and gave them his note as treasurer therefor, which note was paid March 9th 1858, and, at the same time of borrowing said money, Richardson left with the plaintiffs a certified copy of the record of said town showing his election as treasurer and collector, and reciting the vote authorizing him to borrow the money.

The signatures of the selectmen upon the certificate appended to the second note were obtained by the treasurer for a dishonest purpose, and improperly, but in what way or upon what representation or for what purpose, as understood by the selectmen, there was no evidence ; and the fact that they were obtained improperly was not known to the plaintiffs, and they took no steps to ascertain it. It was not proved that the certificate appended to the first note declared on was ever given to Stephen Cutter.

Upon these facts, the case was reserved for the determination of the whole court.

*J. G. Abbott & D. S. Richardson,* for the plaintiffs. A town treasurer is the agent of the inhabitants of the town, placed by them in a position of trust and confidence which gives him credit. They may protect themselves against his dishonesty by a bond, and by checks and limitations in their votes ; but the public have no means of protection, and may therefore rely upon his representations, while he is acting under apparent

authority. He is the custodian of the money. It is peculiarly within his knowledge whether he has exhausted his authority; and it would be impossible to find out lenders and inquire of them, if he does not choose to make them known. If the plaintiffs cannot recover, all loans to towns must be at the peril of the lender, and he, though without fault or the means of protection, must suffer from the dishonesty of the agent, against which they can protect themselves and him. As between the two, the defendants should suffer rather than the lender, because they employed dishonest and careless agents, and put them in a position to commit a fraud upon the plaintiffs. *Hern* v. *Nichols*, 1 Salk. 289. *Lobdell* v. *Baker*, 1 Met. 203. *Locke* v. *Stearns*, Ib. 563. *Wade* v. *Withington*, 1 Allen, 563. *Clement* v. *Leverett*, 12 N. H. 317. *Glidden* v. *Unity*, 33 N. H. 577. *Farmers' & Mechanics' Bank* v. *Butchers' & Drovers' Bank*, 16 N. Y. 125. *North River Bank* v. *Aymar*, 3 Hill, (N. Y.) 262. *Gould* v. *Venice*, 29 Barb. 442. The defendants are estopped from denying the treasurer's authority, and from showing that he had already exhausted his authority, because in doing this they would show the fraud and dishonesty of their agent towards the plaintiffs. The loan by the plaintiffs was in all respects according to the authority given by the defendants to their agent; the notes were sufficient on their face to bind the defendants; the plaintiffs knew nothing tending to render any reasonable person suspicious; and they were guilty of no laches in not ascertaining the agent's frauds. Under these circumstances, the fact that the agent had previously exhausted his authority is no defence. When a loss arises simply from the dishonesty of the agent selected, while he is acting strictly within the terms of his authority, so far as third persons can discover, the principal who appointed the agent must be the sufferer.

*T. H. Sweetser & C. P. Curtis, Jr.*, for the defendants, cited *Butterfield* v. *Melrose*, 6 Allen, 187 ; *Mussey* v. *Beecher*, 3 Cush. 511 ; *Goff* v. *Rehoboth*, 12 Met. 26 ; *Murdock* v. *Mills*, 11 Met. 5 ; *Upton* v. *Suffolk Mills*, 11 Cush. 586 ; *Wood* v. *Goodridge*, 6 Cush. 117 ; *Nash* v. *Drew*, 5 Cush. 422 ; *Keyes* v. *Westford*, 17 Pick. 273 ; *Millet* v. *Stoneham*, 26 Maine, 78 ; *Brady* v. *Todd*

9 C. B. (N. S.) 591 ; *Hubbersty* v. *Ward*, 8 Exch. 330 ; *Grant* v. *Norway*, 10 C. B. 665 ; *Schooner Freeman* v. *Buckingham*, 18 How. (U. S.) 182, 191 ; *Alexander* v. *Mackenzie*, 6 C. B. 766.

BIGELOW, C. J.   There is no view of the facts of this case, in which, according to the rules of law applicable to the relation of principal and agent, the defendants can be held liable on the notes declared on.

It is conceded that the treasurer of a town, *virtute officii*, has no authority to borrow money in the name or behalf of a town, or to pledge its credit in any way.   It is also admitted that the defendants did not clothe their treasurer with any general authority or power to procure a loan of money for them or to give his note as treasurer, to be binding on them for an unlimited amount.   On the contrary, it appears that the authority vested in him by the votes of the town previous to the negotiation of the loans with the plaintiffs was strictly limited, both as to the amount which he was empowered to borrow on the credit of the town, and the purpose for which the money was to be appropriated by him.   There can be no doubt, therefore, that he was in the strictest sense a special agent, acting under a limited and clearly defined authority.

Nor can there be any doubt that the nature and extent of this authority were fully known to the plaintiffs at the time they advanced this money and received the notes which they seek to enforce in this action.   Copies of the votes of the town, by which the treasurer was authorized to borrow specific sums in anticipation of the taxes, were given to the plaintiffs.   The only other important fact in the case, of which however it appears that the plaintiffs were ignorant, is, that before the treasurer applied to them to obtain the loans which they made to him, he had acted under the power conferred on him by the votes of the town, had borrowed of others the amounts which he was authorized to get on credit, and had thus entirely exhausted the authority which the defendants had vested in him.

The unavoidable legal conclusion from these admitted facts is, that when the plaintiffs advanced money to the treasurer and took from him the notes declared on, he had ceased to be

the agent of the town to borrow money, or to enter into any negotiations for a loan for which their credit was to stand pledged. He was then for such purposes a stranger to the defendants, and had no more power or authority to bind them, or to give notes in their name or behalf, than any other citizen of the town. If, therefore, they are to be held liable in this action, it cannot be on the ground that the plaintiffs dealt with their agent. The relation of principal and agent no longer subsisted between him and the town. His authority was then at an end, and the fact that he had been previously clothed with an agency to act in behalf of the town has no legal tendency to prove an authority to enter into the contracts, in their name and behalf, which are the subject of this action. This is not a case, therefore, where an agent, during the continuance of his authority, has exceeded its limits, by going beyond his instructions or doing some act outside of the scope of his agency. The facts show that the agency had terminated, and that the transactions on which it is now attempted to charge the defendants were entered into without any authority at all from them. It is clear, then, on these facts, that the defendants cannot be charged on the notes declared on, as contracts which were entered into by their agent.

On what principle, then, can the plaintiffs maintain this action ? The answer which they make to this question is, that it was the act of the defendants in appointing the treasurer as their agent to borrow money for them, which enabled him to practise a fraud, by which the plaintiffs were induced to part with their money, and that the case therefore comes within the familiar principle that, whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. In other words, that it was the votes of the town authorizing the treasurer to borrow money which put it into his power to deceive the plaintiffs, and that they ought not to bear a loss occasioned by an act into which they were innocently led by the apparent authority with which the defendants had clothed the person who deceived them. But it seems to us that this position rests on

a misapplication of a rule of law to a state of facts which does not bring the case at bar within the principle on which the rule is founded.

It is certainly true that principals have been held to be bound by acts and representations of their agents, which were never authorized. But it will be found that, in all such cases, the unauthorized act or representation was part of a transaction or dealing which was within the power given to the agent, and was done or made, not only during the continuance of the agency, but in the course of the employment delegated by the principal, although contrary to the private instructions or in excess of the authority actually granted. Thus, if a person authorized to sell an article makes false representations concerning its nature and quality, in violation of the orders of his principal, the latter will be bound, because he holds the agent out as competent to act for him in the particular transaction ; and it is reasonable that of two innocent parties he who enables a third person to commit a fraud should bear the consequences of the unauthorized act. Such was the leading case of *Hern* v. *Nichols*, 1 Salk. 289. But it is to be observed that in this and similar cases the agent when he commits the fraud is, as to the main transaction, acting strictly within his authority, and that the unauthorized fraudulent act is only incidental to that which is within the power granted to him. Take another case, somewhat different in its character, to which the principle would be applicable : An agent is authorized to give the notes of his principal to obtain money for a specific and designated purpose. A third person lends money to such agent, and takes from him the promise of the principal. The latter would be liable on such promise, although the money was procured by the agent with an intention to misapply it by appropriating it to his own use, or to some other object different from that for which he was authorized to procure it. The lender in such case ought not to suffer a loss by reason of the fraudulent or unauthorized act of the agent, but its consequences should fall on the principal who had employed the agent, and put a false confidence in him, by which he was enabled to deceive others. The doctrine

that a principal is responsible for the deceit or fraud or misrepresentations of his agent is to be taken with the limitation that such acts, though unauthorized, are committed during the existence of the agency, and while the agent is employed in doing the business committed to his hands. But the rule cannot be extended so as to render the principal liable for acts or statements made either in dealings which were never authorized by the principal, or in transactions which, although originally embraced within the power, in fact took place after the agency was wholly terminated. To hold otherwise would be equivalent to saying that a principal who appoints a special agent with a limited authority is responsible for his wrongful acts committed not only outside of the power intrusted to him, but also after his authority has entirely ceased. It is certainly reasonable that a principal should be held liable for the fraud, deceit or misrepresentations of his agent, although unauthorized, if practised in the course of his employment, or while dealing for and in behalf of his principal. Inasmuch as in such cases the principal transaction is within the power granted to the agent, so must all the incidents and means by which it was accomplished be deemed to be imputable to him. But to carry the doctrine farther would enable an agent not only to enlarge his authority so as to embrace matters which were never included within it, but also to continue it after it had ceased.

If these views are correct, the principle or rule of law on which the plaintiffs rely in support of this action is not applicable to this case. When the loans were negotiated and the notes were given which are set out in the declaration, the agency of the treasurer to borrow money for the town had terminated. The specific acts which he was alone authorized by the votes to do had been fully accomplished. He could then neither bind the town by any act nor by any representation. The case is much stronger against the right of the plaintiffs to charge the defendants for the unauthorized act of the agent than it would have been if it had appeared that the treasurer, when he dealt with the plaintiffs, was possessed of a limited authority, which he exceeded in his transactions with them

But even in such case the authorities are quite decisive that the principal would not be bound by the act of the agent. In *Grant* v. *Norway*, 10 C. B. 665, the master of a vessel had signed a bill of lading for twelve bales of silk shipped on board the vessel, which was indorsed and pledged to the plaintiff for a valuable consideration. No such goods were in fact received by the master. It was held that the owners of the vessel were not liable to the plaintiff on this contract of the master; that although he was their general agent, with authority to sign bills of lading, it was an authority limited to the signing of such bills for goods actually shipped. A similar decision was made in *Coleman* v. *Riches*, 16 C. B. 104, on a somewhat different state of facts. The action was brought to recover of the defendant the value of certain grain. The facts of the case were these : The plaintiff was a dealer in grain. He was in the habit of paying the price to vendors of the article on the production of receipts, signed by the defendant's agent, that a certain quantity had been delivered at the defendant's wharf. The defendant's agent signed a false receipt for grain which had not been so delivered, and, on the presentation of the receipt, the plaintiff paid the price of the grain. In an action against the defendant to recover the price thus paid, it was held that the defendant was not liable, because his agent was authorized to sign receipts only for grain actually delivered, and not for that which was not received by him. See also *Hubbersty* v. *Ward*, 8 Exch. 330 ; *Mechanics' Bank* v. *New York & New Haven Railroad*, 3 Kernan, 599, 633 ; *Schooner Freeman* v. *Buckingham*, 18 How. (U. S.) 182. The case of *Mussey* v. *Beecher*, 3 Cush. 511, is a decisive authority in favor of the defendants. If it is distinguishable at all from the case at bar, it is for the reason that the facts there proved afforded less ground for exonerating the principal than those which are agreed in the present case. The defendant in that case authorized the agent to purchase goods on his account during a period of time not exceeding a year, with a proviso limiting the right to purchase and incur debts to an amount not exceeding at any one time the sum of two thousand dollars. During the year the plaintiff sold goods

to the agent, and it was held that he could not recover the price thereof from the principal, if, at the time of the sale, the agent had exceeded the prescribed limits, although the plaintiff was able to show that the agent, at the time of the purchase, represented that he would not thereby exceed his limit, and, in reply to inquiries by the plaintiff, stated that the limit allowed to him had not been exceeded. Two facts existed in that case which are wanting here. One is, that the agent actually made false representations as to the extent of his agency at the time of the transaction in question. None are stated to have been made in the present case, except such as might have been implied from the presentation to the plaintiffs of the votes of the town, and the negotiation of the loans. The other fact, still more important, which existed in *Mussey* v. *Beecher* is, that the purchases were made during the year that the agency was to continue. In the case at bar, the loans were made after the agency had terminated. If the decision of the majority of the court in *Mussey* v. *Beecher* was correct, as we think it was, it is clear that the defendants cannot be held liable in this action.

It is suggested that it was impossible for the plaintiffs to ascertain whether the agent had exhausted his authority by borrowing the money which he was empowered to obtain in behalf of the town, prior to his application to the plaintiffs, and that as they dealt with him on the faith of the apparent authority vested in him by the votes of the town, and in ignorance of a fact the truth of which they had no means of finding out, the defendants ought to be held liable. We do not see that the conclusion legitimately follows from the premises. A similar argument was urged without success in *Mussey* v. *Beecher.* It seems to us that there are two decisive answers to it. The first is, that it does not appear in the present case that the plaintiffs could not have ascertained by a reasonably diligent inquiry that the treasurer, before his application to them, had fully executed his power and exhausted his authority. On the contrary, it appears that, when the first loan was negotiated by the agent with the plaintiffs, it was well known to the defendants that long previously he had borrowed of another person in behalf of the

town the full sum he was authorized to obtain. By inquiry of the principal, the plaintiffs could have ascertained this fact. Besides ; the money was borrowed by the agent under circumstances well calculated to excite suspicion and put the plaintiffs on their guard. This is especially true in regard to the first loan. The negotiations of the plaintiffs in relation to it took place several months after the vote of the town authorizing the treasurer to obtain money for the temporary purpose of anticipating the revenue of the town from the taxes of the current year, and when on its face the transaction was one which, to say the least, was open to question as being in excess of the agent's authority. The second loan was made under different circumstances, but it was negotiated by the same person to whom they had made the previous advance of money, and while that loan still remained unpaid, a circumstance of itself sufficient to cause the plaintiffs to doubt the honesty and good faith of the agent with whom they were dealing. But, apart from all this, there is a more comprehensive answer to the argument urged by the plaintiffs. It is this : The principal is not to be held bound by an act of the agent which exceeds the authority vested in him ; if the authority is conditional or dependent on the existence of some fact, whoever deals with the agent must see to it that the condition is fulfilled, or that the requisite fact exists on which the authority to bind the constituent depends. If, for example, a person empowers an agent to act for him while absent in a foreign country, and expressly provides that the authority is to cease on his return home, can it be doubted that in such case it is the duty of the person who undertakes to deal with the agent to ascertain whether the authority has terminated by the return of the principal, and that the latter would not be bound by anything done by the agent after the authority had ceased by the prescribed limitation ? The liability of the principal certainly cannot be made to turn on the ease or difficulty with which the continuance or termination of the authority can be ascertained. Such a doctrine would create a new head in the law of agency. The true rule is the safe one for both parties. The principal cannot be held responsible

for an act of his agent beyond the limits of the authority delegated to him, unless it is done in the course of the agent's employment in the business of his principal, and during the continuance of the agency. If this is not the rule, a principal is at the mercy of his agent, and may be held bound for acts which he never authorized, however carefully he may have limited and guarded the power which he intrusted to him. On the other hand, whoever deals with an agent must at his peril ascertain whether the agent has any authority in fact, and, if he has whether the act or dealing is within its scope. If this can be ascertained, there will be no risk incurred ; if it cannot be ascertained, the sure protection will be to refrain from dealing with the agent at all. *Judgment for the defendants.*